# United States District Court
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| MARCUS TRAYLOR | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-CV-406-S |
| | § | |
| GIDEON YORKA | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Gideon Yorka's Motion for Summary Judgment Based on Qualified Immunity ("Motion") [ECF No. 36]. The Court has considered the Motion, Defendant Gideon Yorka's Brief in Support of his Motion for Summary Judgment Based on Qualified Immunity ("Defendant's Brief") [ECF No. 37], Plaintiff's Response to Defendant's Motion for Summary Judgment Based on Qualified Immunity [ECF No. 40], Plaintiff's Brief in Support of his Response to Defendant Gideon Yorka's Motion for Summary Judgment Based on Qualified Immunity ("Plaintiff's Brief") [ECF No. 41], Defendant Gideon Yorka's Reply Brief in Support of his Motion for Summary Judgment Based on Qualified Immunity [ECF No. 47], the summary judgment evidence presented, and the applicable law. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

## I.      BACKGROUND

The events that gave rise to this lawsuit occurred on February 16, 2020, at Clutch Bar and Restaurant ("Clutch Bar"). There, Plaintiff Marcus Traylor and three friends ordered "bottle service" and consumed alcohol. Pl.'s App. [ECF No. 42] at 40, 57, 763-64. Between them, they ordered one bottle of champagne and two full-sized bottles of hard alcohol, one containing brown liquor and the other clear. *Id.* at 48-49. Plaintiff admits to drinking at least "two or three" glasses of champagne over the course of an hour. *Id.* at 57. At some point, after the group was asked to leave, a physical altercation ensued between Plaintiff and a bouncer. *Id.* at 59-64.

Defendant Gideon Yorka, a City of Dallas police officer who was working an off-duty security job at Clutch Bar with two other police officers, was "informed by the bouncer/security at [Clutch Bar] that there was a big fight inside." *Id.* at 329; *see* Def.'s App. [ECF No. 38] at 84-85, 280. Defendant entered Clutch Bar and detected a strong smell of alcohol. *Id.* at 281. He also observed Plaintiff, who had a bloodied mouth, being restrained on the floor by a bouncer approximately five feet from the front door. *Id.* at 86-87, 281; Pl.'s App. 82-84. Defendant walked towards Plaintiff, picked him up, grabbed his arm, and escorted him out and onto the street, which had been taped off by police. Def.'s App. 88-91. Defendant also detected the smell of alcohol on Plaintiff's breath. *Id.* at 18, 281.

The parties dispute what happened next.[1] According to Defendant, while outside, Plaintiff turned around, repeatedly tried to make his way back into Clutch Bar, and said "this sh** is not over; this mother****er started it." Def.'s App. 89-90. Defendant told Plaintiff many times that he needed to leave. *Id.* at 90. But he did not. Defendant pushed Plaintiff twice to prevent him from going back inside. Plaintiff walked up to Defendant and hit him with his forearms in the neck or upper chest area, pushing Defendant back and creating space between the two. *Id.* at 91-94. Defendant claims that Plaintiff then walked towards him in an "aggressive manner," and Defendant punched Plaintiff in the face to "defend [him]self." *Id.* at 94-95, 281.

Plaintiff presents a different version of events. According to him, he never hit Defendant or tried to go back into Clutch Bar. Pl.'s App. 75, 78-79. Rather, Plaintiff claims that after being escorted out, Defendant pushed him into the street. *Id.* at 88. Plaintiff then repeatedly told Defendant that he left his wallet inside Clutch Bar, to which Defendant responded by telling

---

[1] Although three other police officers on the scene as well as Plaintiff's three friends who were with Plaintiff that night were deposed, none witnessed the disputed events that occurred outside Clutch Bar. *See* Pl.'s App. 245, 304-05, 343, 689-90, 847.

Plaintiff that he needed to leave. *Id.* at 75-76. Plaintiff asserts that he started walking towards the sidewalk to seek assistance from another officer in retrieving his wallet and was hit by Defendant. *Id.* at 75-76, 88-96.

A cellphone video recorded by a bystander and submitted by both parties is the only footage capturing part of the events that took place outside Clutch Bar that night. *See* Def.'s App. 279; Pl.'s Ex. A. The first two seconds of the video show a large group of people, some of whom appear to be arguing with each other, gathered on the sidewalk in front of Clutch Bar. The video then pans to the left and shows Plaintiff[2] and Defendant[3] standing on the street facing each other, with Plaintiff away from the sidewalk and Defendant closer to the sidewalk. Another officer is standing behind Defendant and talking with a bystander. Plaintiff is separated from Defendant by approximately five feet. Plaintiff then leans forward and charges towards Defendant. Defendant lunges forward and punches Plaintiff twice in the face, knocking Plaintiff to the ground. When Plaintiff falls to the ground, Defendant and the other officer both rush towards Plaintiff and stand around him.

Following the incident, Plaintiff was taken to the hospital by ambulance. Pl.'s App. 104. He was arrested and charged with felony assault against a peace officer based solely on Defendant's narrative of the events that night. *See* Def.'s App. 2 (arrest sheet indicating "CHARGE: ASSAULT – PUB SERV (PEACE OFFICER/JUDGE)" and citing Texas Penal Code Section 22.01(b-2)); Pl.'s App. 243-244, 256, 305-15. That charge was later reduced to a misdemeanor assault, and Plaintiff was issued a citation and released. *See* Def.'s App. 2.

Plaintiff filed this action pursuant to 42 U.S.C. § 1983, alleging three claims against Defendant. First, Plaintiff claims that Defendant used excessive force in violation of his Fourth

---

[2] At 5'11" tall and weighing 280 pounds, Plaintiff is taller and has a larger build than Defendant. Def.'s App. 18, 281.
[3] Defendant is wearing his police uniform that reads "DALLAS POLICE."

Amendment rights when Defendant punched him. *See* Compl. [ECF No. 1] ¶¶ 85-100. Second, Plaintiff asserts that Defendant violated his Fourteenth Amendment substantive due process rights by allegedly lying about being struck by Plaintiff. *See id.* ¶¶ 101-125. Finally, Plaintiff brings a claim for unlawful arrest in violation of the Fourth Amendment based on the alleged lie that Plaintiff hit Defendant. *See id.* ¶¶ 126-140. Defendant now moves for summary judgment on all counts based on qualified immunity.

## II.   LEGAL STANDARD

### A.   *Summary Judgment*

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party bears the burden of showing that summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets his burden by informing the Court of the basis of his motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Id.*; FED. R. CIV. P. 56.

When reviewing the evidence on a motion for summary judgment, the Court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The Court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. As long as there appears

to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id.* at 250.

### B. *Qualified Immunity*

Under 42 U.S.C. § 1983, private citizens may sue public officials for violations of their federal statutory or constitutional rights. *See Monroe v. Pape*, 365 U.S. 167, 171 (1961). Section 1983, however, shields public officials from civil liability under the doctrine of qualified immunity "so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). This "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 5 (2013) (internal quotation marks omitted).

The qualified immunity defense has two prongs: (1) whether an official's conduct violated a statutory or constitutional right of the plaintiff; and (2) whether the right was "clearly established" at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson*, 555 U.S. 223. "A court may rest its analysis on either prong." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (citing *Morgan v. Swanson*, 659 F.3d 359, 385 (5th Cir. 2011) (en banc)); *see Pearson*, 555 U.S. at 236.

An officer's invocation of qualified immunity "alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010); *see Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). Once the movant asserts the affirmative defense of qualified immunity, the burden shifts to the plaintiff to "rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material

fact exist regarding the reasonableness of the official's conduct." *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 419 (5th Cir. 2008).

### III.   ANALYSIS

### A.   *Excessive Force Claim*

### *i.*   Constitutional Violation

The Fourth Amendment confers the right to be free from unreasonable searches and seizures, U.S. CONST. amend. IV, and a seizure is unreasonable if it involves excessive force, *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). To state a Fourth Amendment excessive force claim under 42 U.S.C. § 1983, a plaintiff must demonstrate "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016). Because "inquiries regarding whether a use of force was 'clearly excessive' or 'clearly unreasonable . . . are often intertwined,'" courts may consider those questions together. *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (quoting *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012)). Additionally, an injury is "generally legally cognizable when it results from a degree of force that is constitutionally impermissible—that is, objectively unreasonable under the circumstances." *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008). The issue, therefore, is whether the use of force was reasonable.

The Court must determine the reasonableness of the use of force "from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. This inquiry "requires careful attention to the facts and circumstances of each particular case,

including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396; *see also Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 342 (5th Cir. 2020) (holding that the use of force must be proportionate "to the situation"); *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) ("Excessive force claims are necessarily fact-intensive."). The Court must determine whether the totality of the circumstances justified the particular use of force. *See Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008). The ultimate inquiry is whether the force used was reasonable "under the facts as a reasonable officer *would perceive them.*" *Griggs v. Brewer*, 841 F.3d 308, 313 (5th Cir. 2016) (emphasis in original).

In analyzing Defendant's use of force, the Court considers "only the facts that were knowable" to Defendant at the time. *See White v. Pauly*, 137 S. Ct. 548, 550 (2017) (per curiam); *see Callahan*, 623 F.3d at 253 ("An official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight."). Accepting Plaintiff's version of the events as true, it was objectively reasonable for Defendant to believe that Plaintiff had just been in a fight with a bouncer and was dangerous. *See Salazar v. Molina*, 37 F.4th 278, 283 (5th Cir. 2022) (considering whether the officer had been warned that the plaintiff was dangerous in determining the threat posed by the plaintiff); *Escobar v. Montee*, 895 F.3d 387, 394-95 (5th Cir. 2018) (same). Once outside Clutch Bar, and prior to using force, Defendant repeatedly told Plaintiff to leave, which also bears upon the reasonableness of Defendant's subsequent use of force. *See Poole*, 691 F.3d at 629 (considering the "measured and ascending" actions of the officer prior to using force). Despite these orders, Plaintiff—who was much larger than Defendant and smelled of alcohol— leaned forward and charged towards Defendant who had his back to a contentious group of people. *See Poole v. City of Shreveport*, 13 F.4th 420, 425 (5th Cir. 2021) ("Common sense, and the law, tells us that a suspect is less of a threat when he is turning or moving away from the officer.")

(citing *Roque v. Harvel*, 993 F.3d 325, 339 (5th Cir. 2021); *Hanks*, 853 F.3d at 746).  Moreover, at the time that Defendant struck Plaintiff, Plaintiff was not restrained, surrounded, or subdued such that he no longer could pose an immediate threat of harm.  *See, e.g., Lombardo v. City of St. Louis*, 141 S. Ct. 2239, 2241 (2021) (per curiam) (noting that whether a subject "was handcuffed and leg shackled" reflects on "the security problem at issue[] and the threat—to both [the arrestee] and others—reasonably perceived by the officers").  The Court finds that Defendant's decision to strike Plaintiff at that moment was reasonable in proportion to the threat posed by Plaintiff as well as the tense and uncertain situation.  *See, e.g., Graham*, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.") (internal citation and quotation marks omitted).

### *ii.*    **Clearly Established Right**

Alternatively, Defendant is entitled to summary judgment based on qualified immunity because Plaintiff has not met his "heavy" and "demanding" burden of showing that Defendant's use of force violated a clearly established right.  *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019); *Mendez v. Poitevent*, 823 F.3d 326, 331 (5th Cir. 2016).

To constitute a violation of a clearly established right, case law must place the constitutional question "beyond debate."  *Morrow*, 917 F.3d at 874 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  "Pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances."  *Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997) (emphasis omitted).  "[T]he Supreme Court has repeatedly instructed that clearly established law is *not* to be defined at a high level of generality.  This is particularly true in recent years."  *Tucker v. City of Shreveport*, 998 F.3d 165, 173 (5th Cir. 2021)

(emphasis in original) (citing *City of Escondido v. Emmons*, 139 S. Ct. 500 (2019); *Kisela v. Hughes*, 138 S. Ct. 1148 (2018); *Mullenix*, 577 U.S. 7).

Plaintiff points to several cases for the general proposition that the degree of force an officer can reasonably use is reduced when the officer does not negotiate with a suspect prior to using force and when a suspect is not actively resisting. However, those cases are not sufficiently analogous to the facts at issue, and "[i]t is the plaintiff's burden to find a case in his favor that does not define the law at a 'high level of generality.'" *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018).

In *Bush*, the officer "forcefully slammed [the plaintiff]'s face into a vehicle when [the plaintiff] was handcuffed and subdued." 513 F.3d at 501. Here, Plaintiff was not handcuffed or subdued. *See, e.g.*, *Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015) ("[O]nce a suspect has been handcuffed and subdued, and is no longer resisting arrest, an officer's subsequent use of force is excessive.").

In *Darden v. City of Fort Worth*, the plaintiff was thrown to the ground, tased twice, choked, punched and kicked in the face, pushed into a face-down position, and had his face pressed into the ground and his hands pulled behind his back to be handcuffed. *See* 880 F.3d 722, 725 (5th Cir. 2018). And in *Newman v. Guedry*, the plaintiff was struck by a baton "thirteen times in about nine seconds" and was tased multiple times. 703 F.3d 757, 760 (5th Cir. 2012). These cases involved much greater uses of force than the present case.

Finally, in *Deville*, officers pulled the plaintiff over for a minor traffic offense and the plaintiff passively resisted by refusing to exit her vehicle because she did not want to leave her grandchild alone. The officers "engaged in very little, if any, negotiation" with the plaintiff, broke the plaintiff's driver's window, and extracted the plaintiff from the vehicle. 567 F.3d at 168-69. In the present case, Plaintiff did not passively resist. Rather, he physically and deliberately

approached Defendant. Moreover, Defendant did engage in negotiation with Plaintiff, as he initially pushed Plaintiff away from Clutch Bar and onto the street, and repeatedly told Plaintiff that he needed to leave. Due to the active nature of Plaintiff's resistance as well as the threat he posed, the use of force used by Defendant was not clearly excessive or unreasonable. *See Poole*, 691 F.3d at 629.

In light of the requirement that clearly established law be particularized to the facts at issue and Plaintiff's failure to identify such law, the Court finds that Defendant is entitled to qualified immunity. As the Fifth Circuit recently stated, "[t]he specificity requirement assumes special significance in excessive force cases, where officers must make split-second decisions to use force." *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1166 (5th Cir. 2021). Defendant's Motion is therefore **GRANTED** as to Plaintiff's excessive force claim.

### B. *Unlawful Arrest Claim*

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Arrests are seizures of persons and, therefore, must be reasonable under the circumstances to comply with the Fourth Amendment. *See Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 585 (2018). A warrantless arrest is reasonable if the officer has "probable cause" to believe that a criminal offense has been . . . committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Mesa v. Prejean*, 543 F.3d 264, 269 (5th Cir. 2008). "The 'constitutional tort[]' of false arrest . . . require[s] a showing of no probable cause." *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001).

Plaintiff asserts that Defendant did not have probable cause to arrest him for assault because he never struck Defendant. But contrary to the implication raised by Plaintiff's argument, Defendant "may justify the arrest by showing probable cause for any crime." *Voss v. Goode*, 954 F.3d 234, 238 (5th Cir. 2020); *see also Sam v. Richard*, 887 F.3d 710, 715-16 (5th Cir. 2018) (holding that justifying an arrest by pointing to probable cause for the misdemeanor of crossing an interstate highway was permissible even if it was "only an after-the-fact justification for the arrest"). Defendant claims that based solely on the undisputed evidence, he had sufficient probable cause to make an arrest for multiple crimes, including interference with a police officer's performance of public duties. The Court agrees.

The Fifth Circuit has held that it is the duty of every peace officer, including off-duty officers, "to preserve the peace within the officer's jurisdiction." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 466 (5th Cir. 2010). Texas Penal Code section 38.15 provides that "[a] person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with . . . a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." TEX. PENAL CODE § 38.15(a)(1). That section also creates an express defense to prosecution for "interruption, disruption, impediment, or interference [that] consisted of speech only." *Id.* § 38.15(d). Plaintiff argues that this exception applies because "his allegedly disruptive conduct was essentially limited to simply informing Defendant . . . that his wallet was still inside Clutch Bar and asking for assistance with attaining his belongings." Pl.'s Br. 48. But Plaintiff's conduct was not limited to speech.

It is undisputed that once on the street, Plaintiff was repeatedly told by Defendant to leave the scene. Pl.'s App. 75-76; Def.'s App. 90. And the video shows that Plaintiff walked towards Clutch Bar despite Defendant's instructions. Texas courts have found that failure to comply with an officer's instructions violates Texas Penal Code section 38.15 and is not protected speech. *See*

*Duncantell v. State*, 230 S.W.3d 835, 842 (Tex. App.—Hous. [14th Dist.] 2007, pet. ref'd) (finding that defendant violated Section 38.15 by disregarding officers' orders to stand away from crime scene); *Key v. State*, 88 S.W.3d 672, 676 (Tex. App.—Tyler 2002, pet. ref'd) (concluding that defendant "engaged in conduct other than speech in refusing to obey the directives of" a police officer to remain on the sidewalk). Similarly, the Fifth Circuit has held that failure to comply with a police officer's instruction to stand back is not protected speech and gives the officer probable cause to arrest under Section 38.15. *See Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 657 (5th Cir. 2004) ("[W]hile Haggerty's relevant actions included speech, a reasonable officer could have believed that they were not *limited* to speech: Haggerty stepped forward toward [an officer] after having previously been warned to not interfere and was within relative proximity (10 to 15 feet away).") (emphasis in original); *see Voss*, 954 F.3d at 239 ("'[F]ail[ing] to comply with an officer's instruction, made within the scope of the officer's official duty and pertaining to physical conduct rather than speech' can also constitute interference.") (quoting *Childers v. Iglesias*, 848 F.3d 412, 415 (5th Cir. 2017)); *see also Buehler v. Dear*, 27 F.4th 969, 992 (5th Cir. 2022) ("We have held, based on caselaw from Texas courts interpreting the relevant provision, that . . . refusing to obey police officers' repeated and unambiguous warnings to step back so as not to interfere with officers' official duties . . . establishes probable cause to arrest for a violation of Texas Penal Code § 38.15(a)(1).").

Based on the precedent and the totality of the undisputed facts and circumstances, a reasonable officer could have believed that Plaintiff interfered with Defendant's performance of his public duties. Accordingly, the Court finds that probable cause to arrest Plaintiff existed and Defendant did not violate Plaintiff's Fourth Amendment right against unlawful seizure. The Court therefore **GRANTS** the Motion as to the unlawful arrest claim.

### C. *Due Process Claim*

The Fifth Circuit recently recognized a substantive due process right "not to have police deliberately fabricate evidence and use it to frame and bring false charges against a person." *Cole v. Carson*, 802 F.3d 752, 771 (5th Cir. 2015) ("*Cole I*").[4]  A plaintiff may pursue a due process fabrication of evidence claim under the Fourteenth Amendment only when a Fourth Amendment claim, such as false arrest or illegal detention, is "unavailing."  *Id.* at 764, 766, 773.

In *Cole I*, the plaintiff alleged that a police officer intentionally fabricated evidence "in order to conceal and justify excessive force" by telling investigators that the plaintiff aimed his gun at the officer prior to being shot. 802 F.3d at 763, 772.  Based on the officer's statement, the plaintiff was charged with the felony offense of aggravated assault on a public servant. *Id.* at 763. While that charge was ultimately dismissed, the Fifth Circuit nonetheless found that the "official framing of a person in these circumstances undermines the right to a fair trial" and that the "Fourteenth Amendment forbids what allegedly happened to [the plaintiff]." *Id.* at 764, 772-73. The court further held that a Fourth Amendment challenge was unavailing because probable cause existed to arrest plaintiff for the separate crime of unlawfully carrying a weapon. *Id.* at 765.

Defendant contends that Plaintiff cannot maintain a substantive due process claim because the facts here significantly differ from those in *Cole I*.  Defendant first argues that unlike the plaintiff in *Cole I*, Plaintiff here was never officially charged with a felony.  Despite this contention, however, the arrest sheet here explicitly states "CHARGE: ASSAULT – PUB SERV (PEACE OFFICER/JUDGE)," and cites Texas Penal Code section 22.01(b-2). Def.'s App. 2; *see also* TEX. PENAL CODE § 22.01(b-2) ("[A]n [assault] is a felony of the second degree if the offense

---

[4] *Cole I* was vacated by the Supreme Court and remanded to the Fifth Circuit. *See Hunter v. Cole*, 137 S.Ct. 497 (2016).  On remand, the Fifth Circuit reinstated the portion of *Cole I* relating to its due process fabricated evidence theory. *See Cole v. Carson*, 905 F.3d 334, 337 (5th Cir. 2018) (*Cole II*).  *Cole II* was vacated when the Fifth Circuit granted rehearing en banc. *See Cole v. Carson*, 935 F.3d 444 (5th Cir. 2019).  The court there held that, as in *Cole I*, the fabrication-of-evidence claims were still viable. *See id.* at 451.

is committed against a person the actor knows is a peace officer or judge while the officer or judge is lawfully discharging an official duty or in retaliation or on account of an exercise of official power or performance of an official duty as a peace officer or judge.").

Defendant also attempts to distinguish this case by pointing out that the plaintiff in *Cole I* was placed on house arrest, whereas Plaintiff here "never experienced restrictions on his personal freedoms to go about his daily life." Def.'s Br. 25. The Fifth Circuit in *Cole I*, however, did not take the plaintiff's house arrest into account. *See* 802 F.3d at 766 ("[S]etting aside his time seized under house arrest, [the plaintiff] was framed and charged with a felony [and subjected to] reputational injuries flowing from such a serious charge."). The court found that "[b]eing framed and falsely charged brings inevitable damage to the person's reputation, especially where, as here, the crime is a felony involving the threat of violence." *Id.* at 772.

Finally, Defendant argues that Plaintiff cannot bring a substantive due process claim because there was probable cause to arrest Plaintiff for a crime other than felony assault on a peace officer. The same was true in *Cole I*, however, where the plaintiff was lawfully arrested for one crime but also charged with a separate felony based on alleged false statements made by an officer. *Id.* at 763-64. A Fourteenth Amendment due process claim was available there because plaintiff was lawfully arrested for a separate crime. *Id.* at 766. The same is true here.

As in *Cole I*, Plaintiff's Fourteenth Amendment substantive due process claim stems from the disputed fact that Defendant allegedly fabricated evidence by stating to officers that Plaintiff struck Defendant. It is undisputed that the subsequent felony assault charge brought against Plaintiff was based solely on Defendant's statements to officers. Thus, Defendant's allegedly wrongful conduct, if true, violates clearly established law under *Cole I*. The Court finds that genuine issues of material fact exist regarding the reasonableness of Defendant's conduct. Accordingly, Defendant's Motion is **DENIED** as to Plaintiff's due process claim.

## IV.    CONCLUSION

Viewing the facts and deciding all reasonable doubts and inferences in the light most favorable to Plaintiff, Defendant Gideon Yorka's Motion for Summary Judgment Based on Qualified Immunity [ECF No. 36] is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** as to Plaintiff's excessive force and unlawful arrest claims but **DENIED** as to Plaintiff's due process claim.

   **SO ORDERED.**

   SIGNED August 11, 2022.


   **KAREN GREN SCHOLER**
   **UNITED STATES DISTRICT JUDGE**